UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------

THE GAMEOLOGIST GROUP, LLC,

                          Plaintiff,                09 Civ. 6261 (JGK)

             - against -                            MEMORANDUM OPINION AND
                                                    ORDER
SCIENTIFIC GAMES INTERNATIONAL,
INC., and SCIENTIFIC GAMES
CORPORATION, INC.,

                          Defendants.
--------------------------------------------

JOHN G. KOELTL, District Judge:

        The plaintiff, the Gameologist Group, LLC ("Gameologist" or

"the plaintiff"), brought this action against the defendants,

Scientific Games International, Inc. and Scientific Games

Corporation, Inc. (collectively, "Scientific" or "the

defendants"), alleging claims of trademark infringement, false

designation of origin and unfair competition, and false

advertising under the Lanham Act, 15 U.S.C. § 1051 et seq., as

well as several claims under New York law.  In October 2011,

this Court granted the defendants' motion for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure and

dismissed all of the plaintiff's claims.  See Gameologist Grp.,

LLC v. Scientific Games Int'l, Inc., No. 09 Civ. 6261, 2011 WL

5075224, at *20 (S.D.N.Y. Oct. 25, 2011).  The defendants now

move for attorney's fees and costs pursuant to Rule 54 of the

Federal Rules of Civil Procedure.

**I.**

The following facts are undisputed, unless otherwise indicated.

Gameologist is a limited liability company that was formed to develop several gaming concepts, including a concept for a casino table game called "Bling Bling." Gameologist, 2011 WL 5075224, at *2-3.  In 2005 and 2010, respectively, the U.S. Patent and Trademark Office issued trademark registrations to Gameologist's original Managing Member, Jeffrey McGill, for the mark "BLING BLING 2002" for "entertainment in the nature of online three dice casino games" and for "casino games and equipment therefor, namely, board games." Id. at *2.

In December 2003, Gameologist entered into a license agreement with representatives of MDI Entertainment, LLC, a company that had been acquired by defendant Scientific Games International.  Id. at *3.  The agreement granted MDI rights to use the plaintiff's mark in connection with lottery tickets. Id.  In April 2004, MDI and the plaintiff agreed to cancel the license agreement.  Id.

The defendants, who manufacture lottery tickets and provide lottery-related services to state lottery commissions throughout the United States and abroad, have sold several thousand instant lottery tickets to state lottery commissions that feature the word "bling."  Id. at *5.  These tickets were developed and

launched between 2007 and 2010, at least three years after the termination of the license agreement between MDI and the plaintiff.  Id.  The plaintiff claims that the defendants stole the plaintiff's "Bling Bling" concept following termination of the license agreement with MDI and used these ideas for the defendants' own commercial benefit by producing lottery tickets featuring the term "bling."  The defendants stated at oral argument on the summary judgment motion that they had knowledge of the plaintiff's mark at the time they created the lottery tickets in question.  (Hr'g Tr. 6-7, Sept. 27, 2011.)

The plaintiff has not entered into any license agreement with any party other than MDI for use of the plaintiff's mark in connection with lottery-related goods or any other goods or services.  Gameologist, 2011 WL 5075224, at *4.  The plaintiff has never successfully marketed a "Bling Bling" lottery ticket to a state lottery commission or released a product with the "Bling Bling" mark in the lottery industry.  Id.  The only product that the plaintiff actually has sold featuring the mark "BLING BLING 2002" is a board game of which four sales are documented, although the plaintiff claims that additional sales were made in unrecorded transactions in cash.  Id. at *5.

The plaintiff brought this action alleging claims of trademark infringement, false designation of origin and unfair competition, and false advertising under the Lanham Act, 15

U.S.C. § 1051 et seq., as well as claims of unfair competition, passing off, breach of contract, unjust enrichment, and quantum meruit under New York law.  In October 2011, this Court granted the defendants' motion for summary judgment and dismissed all of the plaintiff's claims.  In granting summary judgment dismissing the plaintiff's Lanham Act claims, this Court concluded that the plaintiff's mark was not entitled to trademark protection because the plaintiff had failed to raise a genuine issue of material fact either that the plaintiff engaged in sufficient use of its mark in commerce, id. at *9, or that the defendants' use of the term "bling" in connection with lottery tickets was likely to cause consumer confusion, id. at *17.

The defendants then brought the present motion seeking an award of attorney's fees and costs pursuant to section 35 of the Lanham Act, 15 U.S.C. § 1117(a); 28 U.S.C. § 1927; Rule 11 of the Federal Rules of Civil Procedure; the inherent authority of the Court; and New York General Business Law § 360-m.  The defendants assert that they have incurred attorney's fees of $952,603.25 and costs of $24,204.70.

## II.

The defendants first move for attorney's fees and costs under section 35 of the Lanham Act, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to

4

the prevailing party."  15 U.S.C. § 1117(a).  "Such fees are available only in 'exceptional cases,' which generally means that fees will be awarded to the defendant only if the plaintiff filed the action in bad faith." Nike, Inc. v. Already, LLC, 663 F.3d 89, 99 (2d Cir. 2011); see also Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209, 221 (2d Cir. 2003); Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) (per curiam).

The defendants argue that a finding of bad faith is appropriate here because the plaintiff's claims were so frivolous as to compel the conclusion that the plaintiff brought this action for an improper purpose.  While it is true that bad faith can be inferred when a plaintiff's claims are entirely baseless, see Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A., No. 06 Civ. 6510, 2011 WL 2893087, at *5 (S.D.N.Y. July 14, 2011) (collecting cases), "the mere fact that a plaintiff ultimately did not succeed in its Lanham Act claims does not dictate an inference of bad faith," Farberware Licensing Co., LLC v. Meyer Mktg. Co., Ltd., No. 09 Civ. 2570, 2009 WL 5173787, at *2 (S.D.N.Y. Dec. 30, 2009), aff'd, 428 F. App'x 97 (2d Cir. 2011) (summary order); see also Gordon, 166 F.3d at 439.  Instead, when "courts have found bad faith based on the meritlessness of a plaintiff's claims, '[t]he circumstances were generally such . . . that a court could draw

no inference other than that the actions had been brought for improper purposes.'" Farberware, 2009 WL 5173787, at *2 (quoting Multivideo Labs, Inc. v. Intel Corp., No. 99 Civ. 3908, 2000 WL 502866, at *2 (S.D.N.Y. Apr. 27, 2000)).

In this case, while the plaintiff did not succeed, the plaintiff's claims were not so completely without merit as to compel the conclusion that these claims were brought in bad faith.  Although the Court granted the defendants' motion for summary judgment, the plaintiff's claims were not so baseless that the Court was able to dispose of them without the benefit of substantial proceedings.  Instead, the Court held oral argument on the summary judgment motion, received additional briefing on certain issues, and ultimately required an extensive analysis to dispose of the issues presented on the motion. These are not the hallmarks of a purely frivolous filing.

Moreover, there is no reason to doubt the plaintiff's subjective belief in the merit of its claims.  See Momentum Luggage & Leisure Bags v. Jansport, Inc., No. 00 Civ. 7909, 2001 WL 1388063, at *7 (S.D.N.Y. Nov. 8, 2001) (denying motion for attorney's fees where, "although plaintiff's Lanham Act claims were meritless, there is little reason to doubt that plaintiff believed it owned trademark rights in the word 'Momentum'"), aff'd 45 F. App'x 42 (2d Cir. 2002) (summary order); Multivideo, 2000 WL 502866, at *2 (denying motion for attorney's fees when,

"although [the plaintiff's] Lanham Act claim was completely devoid of merit, there is no reason to doubt that [the plaintiff] believed it had been and would continue to be harmed by [the defendant's] statements").  Throughout the course of these proceedings, the plaintiff has consistently advanced the argument that the defendants used the plaintiff's "Bling Bling" concept for their own commercial advantage following the termination of the plaintiff's license agreement with MDI. While the plaintiff was incorrect in believing that it was entitled to relief on this basis, a flawed understanding of the law is not a sufficient basis for a finding of bad faith.  See Multivideo, 2000 WL 502866, at *3 (pursuit of a "fatally flawed" legal theory is not alone sufficient to demonstrate bad faith). There is no reason to doubt that the plaintiff's belief, however misguided, in the merit of its claims, rather than any improper purpose, was what motivated the filing of this action. Accordingly, a finding of bad faith is not warranted in this case, and the defendants' motion for attorney's fees pursuant to section 35 of the Lanham Act is denied.

### III.

The defendants next seek attorney's fees and costs pursuant to 28 U.S.C. § 1927 and pursuant to the Court's inherent authority to manage its own proceedings.  Under § 1927, a court

may impose sanctions on an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." 28 U.S.C. § 1927.  In addition, courts have inherent power to award attorney's fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. Nasco, Inc., 501 U.S. 32, 44-45 (1991) (internal quotation marks and citations omitted).  "To impose sanctions under either [§ 1927 or the court's inherent authority], the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  Agee v. Paramount Commc'ns, Inc., 114 F.3d 395, 398 (2d Cir. 1997); see also Eisemann v. Greene, 204 F.3d 393, 395-96 (2d Cir. 2000).  Thus, a finding of bad faith is a prerequisite to an award of attorney's fees under either authority.  Agee, 114 F.3d at 398.  For the reasons explained above, a finding of bad faith is not warranted in this case.[1]

---

[1] The defendants argue that a showing of bad faith is not necessary here because the Court may assess attorney's fees pursuant to its inherent authority without a showing of bad faith when the behavior at issue involves an attorney's "negligent or reckless failure to perform his or her responsibility as an officer of the court."  United States v. Seltzer, 227 F.3d 36, 41 (2d Cir. 2000).  The defendants contend that plaintiff's counsel engaged in such negligent or reckless behavior here by failing to conduct a reasonable investigation into the merits of the case before filing this action.  However, in Seltzer, the Court of Appeals for the Second Circuit made clear that a finding of bad faith is only unnecessary when the attorney behavior subject to sanction "involves [the] violation of a court order or other misconduct that is not undertaken for

Accordingly, the defendants' motion for attorney's fees pursuant
to § 1927 and the Court's inherent authority is denied.

## IV.

The defendants next move for attorney's fees and costs
pursuant to Rule 11 of the Federal Rules of Civil Procedure.
Rule 11 provides, in pertinent part, that, by presenting a
"pleading, written motion, or other paper" to the Court, an
attorney "certifies that to the best of the person's knowledge,
information, and belief, formed after an inquiry reasonable
under the circumstances":

> (1) it is not being presented for any improper purpose,
> such as to harass, cause unnecessary delay, or
> needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous
> argument for extending, modifying, or reversing
> existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).  Rule 11 "imposes an affirmative duty on
each attorney to conduct a reasonable inquiry into the viability
of a pleading before it is signed."  Gutierrez v. Fox, 141 F.3d

---

the client's benefit."  Id. at 42.  Here, even assuming that
plaintiff's counsel did negligently or recklessly fail to
conduct a proper pre-filing investigation, such behavior was
undertaken as part of counsel's role in representing the client
and thus a showing of bad faith is a prerequisite to the
imposition of sanctions.  Even if bad faith were not required,
this is not a case where the Court would exercise its discretion
to impose sanctions as part of its power to manage its own
affairs.

425, 427 (2d Cir. 1998) (quoting <u>Eastway Constr. Corp. v. City of New York</u>, 762 F.2d 243, 253 (2d Cir. 1985)).  In order to determine if Rule 11 sanctions are appropriate, the Court must apply an "objective standard of reasonableness" to determine if the attorney has conducted a "reasonable inquiry" into the basis of the arguments advanced.  <u>MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc.</u>, 73 F.3d 1253, 1257 (2d Cir. 1996); <u>Bowman Imp./Exp., Ltd. v. F.J. Elsner & Co. N. Am. Ltd.</u>, No. 02 Civ. 3436, 2003 WL 21543522, at *1 (S.D.N.Y. July 9, 2003).  The imposition of Rule 11 sanctions is discretionary and should be reserved for extreme cases, and "all doubts should be resolved in favor of the signing attorney."[2]  <u>K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.</u>, 61 F.3d 123, 131 (2d Cir. 1995); <u>Bowman</u>, 2003 WL 21543522, at *1.

In this case, although the plaintiff's claims were not meritorious, they were not so objectively unreasonable as to warrant the imposition of sanctions.  Even after the conclusion of discovery, it cannot be said that it was "patently clear that [the plaintiff's claims] ha[d] absolutely no chance of success

---

[2] While the defendants argue that the Court must impose sanctions upon a finding that Rule 11(b) has been violated, the 1993 amendments to Rule 11 made the imposition of sanctions for a Rule 11(b) violation discretionary rather than mandatory.  <u>See</u> Fed. R. Civ. P. 11(c)(1) ("If . . . the court determines that Rule 11(b) has been violated, the court <u>may</u> impose an appropriate sanction . . . ." (emphasis added)); <u>Knipe v. Skinner</u>, 19 F.3d 72, 78 (2d Cir. 1994).

under the existing precedents . . . ." <u>Eastway</u>, 762 F.2d at
254.  While the plaintiff's assertions regarding use in commerce
and likelihood of confusion certainly were weak, these standards
are fact-dependent in their application, and the plaintiff could
reasonably have believed that it had some chance of success,
albeit minimal, on its claims.  See <u>Fishoff v. Coty Inc.</u>, 634
F.3d 647, 654 (2d Cir. 2011) ("The fact that a legal theory is a
long-shot does not necessarily mean it is sanctionable.").
Thus, the defendants' motion for sanctions under Rule 11 is
denied.[3]

## V.

Finally, the defendants contend that they are entitled to
an award of attorney's fees and costs under § 360-m of the New
York General Business Law.  However, it is plain that § 360-m is
intended to provide remedies for plaintiffs who are injured by a
defendant's willful infringement of their mark, rather than for
parties who claim that their adversaries acted wrongfully in the

---

[3] It is also unclear whether the defendants complied with Rule
11's "safe harbor" provision, which requires that a motion for
sanctions be served on the opposing party at least 21 days prior
to the filing of the Rule 11 motion with the Court, in order to
give the opposing party an opportunity to withdraw or correct
the pleading at issue.  Fed. R. Civ. P. 11(c)(2).  A court is
required to deny a Rule 11 motion if the moving party does not
comply with the "safe harbor" requirements.  See <u>Perpetual
Secs., Inc. v. Tang</u>, 290 F.3d 132, 142 (2d Cir. 2002); <u>Hadges v.
Yonkers Racing Corp.</u>, 48 F.3d 1320, 1328 (2d Cir. 1995).

conduct of the litigation.  See N.Y. Gen. Bus. L. § 360-m
(detailing remedies for "[a]ny owner of a mark registered under
this article" and providing that the Court may "enter judgment
for an amount not to exceed three times such profits and damages
[that the defendant derived from the "wrongful manufacture, use,
display or sale" of any counterfeits or imitations of the
plaintiff's mark] and/or reasonable attorneys' fees of the
prevailing party in such cases where the court finds the other
party committed such wrongful acts with knowledge or in bad
faith").  Moreover, section 360-m applies only to owners of
marks registered with the New York Secretary of State.  See N.Y.
Gen. Bus. L. §§ 360-d, 360-m; Marvel Entm't, Inc. v. Kellytoy
(USA), Inc., 769 F. Supp. 2d 520, 528 (S.D.N.Y. 2011) ("Remedies
are available under § 360-m only to those owners of marks
registered with the New York Secretary of State.").  The
defendants do not contend that they own marks registered with
the New York Secretary of State or that the plaintiff willfully
infringed these marks.  The defendants point to no similar case
where a defendant has been awarded attorney's fees where a
plaintiff failed to succeed on its claim for a violation of
§ 360-m.[4]  Thus, § 360-m does not provide a basis for the

---

[4] If the Court had any discretion to award attorney's fees to a
defendant as a "prevailing party" under § 360-m, for the reasons
already explained, the Court would not exercise that discretion
to award attorney's fees to the defendants.

defendants to recover attorney's fees and costs.

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, the remaining arguments are either moot or without merit. For the reasons explained above, the defendants' motion for attorney's fees is **denied**. The Clerk is directed to close Docket No. 78.

SO ORDERED.

Dated:     New York, New York
           April 26, 2012

_____
                                      John G. Koeltl
                            United States District Judge

13